## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **LIFT MEDIA, LLC** | § | **Civil Action No.** |
| **Plaintiff/Counterdefendant.** | § | **1:14-CV-3470-ODE** |
| | § | |
| **v.** | § | |
| | § | |
| **JOSHUA HOHWEILER, and** | § | |
| **GREATER THAN GATSBY, LLC.** | § | |
| **Defendants/Counterclaimants.** | § | |
| **GREATER THAN GATSBY, LLC** | § | |
| **Defendant/Counterclaimant.** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LIFT MEDIA, LLC** | § | |
| **Plaintiff/Counterdefendant.** | § | |
| **GREATER THAN GATSBY, LLC** | § | |
| **Defendant/Third Party Plaintiff.** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ANDREW EGENES &** | § | |
| **ROBERT HASH JR.** | § | |
| **Third Party Defendants.** | § | |

## SECOND AMENDED COUNTERCLAIM AGAINST PLAINTIFF LIFT MEDIA, LLC AND THIRD PARTY COMPLAINT AGAINST ANDREW EGENES & ROBERT HASH JR.

**COMES NOW**, Greater Than Gatsby, LLC,

("Defendants/Counterclaimants"), by and through undersigned counsel, and files

this Counterclaim and Third-Party Complaint for Breach of Contract,

1

Misrepresentation, Fraud, Fraud in the Inducement, Unjust Enrichment and Declaratory Judgment.

## I.

## JURISDICTION AND VENUE

1. This is an action for damages in excess of the jurisdictional amount of seventy-five thousand dollars ($75,000.00), exclusive of reasonable attorney's fees and costs.

2. This Court has subject matter jurisdiction over the claims in this action based on a federal question as pled by Plaintiff under 28 U.S.C. § 2201, Declaratory Judgments.

3. This Court has personal jurisdiction over all parties, and venue in this District is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this Judicial District.

## II.

## PARTIES

4. Defendant/Counterclaimant, Greater Than Gatsby, LLC ("GTG"), is a domestic corporation organized under the laws of the State of Texas and maintains its principal place of business in Heath, Texas; Rockwall County, Texas. It may be served through its Attorney of Record, Charles A. Moster,

Esq., The Moster Law Firm, 4920 S. Loop 289, Suite 102, Lubbock, Texas 79414.

5.  Defendant, Josh Hohweiler is a resident of the State of Texas and may be served through his Attorney of Record, Charles A. Moster, Esq., The Moster Law Firm, 4920 S. Loop 289, Suite 102, Lubbock, Texas 79414.

6.  Plaintiff/Counterdefendant, Lift Media, LLC ("Lift Media"), is a Georgia Limited Liability Company and lists the following address with the Georgia Secretary of State: 1761 Helen Drive NE, Atlanta, Georgia 30306; Fulton County, Georgia.

7.  Lift Media, LLC, lists it Registered Agent as follows:  Suhail Seth, 201 17th Street NW; Suite 1700; Atlanta, Georgia 30363.

8.  Third Party Defendant, Andrew Egenes, is a resident of the State of Georgia and an owner and/or controlling member of Lift Media, LLC and/or at least one of the persons who has personally directed the actions of Lift Media, LLC hereunder. Mr. Egenes may be served at 1761 Helen Drive NE, Atlanta, Georgia 30306; Fulton County, Georgia.

9.  Third Party Defendant, Robert Hash Jr., is a resident of the State of Texas and an owner and/or controlling member of Lift Media, LLC and/or at least one of the persons who has personally directed the actions of Lift Media,

LLC hereunder. Mr. Hash may be served at 1333 Saint Joseph St. Unit 15 Dallas, Texas 75204.

## III.

### <u>COUNT 1</u>

### <u>BREACH OF CONTRACT</u>

10. Defendants/Counterclaimants incorporate by reference each and every allegation contained in the paragraphs above.

11. On or about September 27, 2013, Third-Party Defendants and Defendant Greater Than Gatsby, LLC ("GTG") entered into a binding and enforceable oral agreement (the "Agreement") which provided for the following terms:

   a. Construction of a website for GTG (the "GTG Website").

   b. Generation of the source code for the GTG Website, which is unique to GTG's business and commercial activities (the "GTG Source Code").

   c. Retention of Third-Party Defendants as a contractor to construct, manage, and service the GTG Website subject to the right of GTG to terminate Third-Party Defendants' services at will. The construction of the GTG Website, the GTG Source Code, and actions required to effectuate its launch are hereinafter referred to as the "Contractor Development to Launch Services".

d.  The Contractor Development to Launch Services included the following
    components:

    i.   Design and development related to the installation of the Magento
         platform for the GTG Website.

    ii.  Design and development of the GTG Code.

    iii. Design, development and implementation of a smartphone friendly,
         mobile optimized website to be completed by November 30, 2013.

    iv.  Implementation of an affiliate program by December 31, 2013.

    v.   Account Management to be provided by Third-Party Defendants.

    vi.  IT and Server Infrastructure and Maintenance to be provided by
         Plaintiff

e.  GTG would provide payment to Third-Party Defendants in their capacity
    as a contractor for the Development To Launch Services based on a
    figure equal to 20% of sales after reduction of expenses.

f.  On or about February 20, 2014, the Agreement was amended to add Lift
    Media, LLC as a party to the contract and to provide for Plaintiff and
    Third-Party Defendants to be retained on a month-to-month basis after
    completion of the Development To Launch Services. Compensation to
    Plaintiff and Third-Party Defendants at that point would be in

conformance with the pricing model provided to GTG utilized by a competitor of Plaintiff and Third-Party Defendants, the "GEMS Gorilla Plan".

12. During the course of construction, development, and implementation of the GTG Website, GTG has tendered payments to Plaintiff and Third-Party Defendants in the amount of $629,359.98 in performance with the Agreement.

13. Plaintiff and Third-Party Defendants have breached the Agreement by the following:

   a. Wrongfully maintaining an ownership interest in the proceeds of GTG in contravention of the relationship between the parties.

   b. Failing to resolve recurring technical problems with the Magento platform.

   c. Failing to implement the mobile optimized website leading to lost sales of $2,799,736.98.

   d. Failing to implement the affiliate program by the December 31, 2013 deadline, leading to lost sales of $59,210.00.

   e. Failing to adequately manage the account and provide support for the website resulting in lost sales of $9,350.00.

f.  Failing to adequately maintain the website by not addressing and solving technical problems including but not limited to Plaintiff and Third-Party Defendants' unavailability during extended periods of travel within and outside the United States. Given the immediate issues, which confront the operation of an online e-commerce based business, such absences constitute a breach of the Agreement and have disrupted business operations.

g.  Failing to engage in proper Search Engine Optimization ("SEO") to maximize the site's search engine ranking. Such failure includes lack of speed optimization for the site, failing to implement a mobile site, failing to optimize the current site for mobile, and failure to implement a cognizable content strategy. Such failure by Lift Media, LLC, Andrew Egenes and Robert Hash, Jr. have resulted in a dramatic negative impact to the sites visibility, the sites traffic and has led to lost profits in the amount of $8,600,131.51

h.  Failing to engage in proper Website Conversion Optimization. Website Conversion Optimization requires constant testing in order to maximize the sales generated by website customers. Lift Media, LLC, Andrew Egenes, and Robert Hash, Jr. have wholly failed to engage in

the Website Conversion Optimization process by failing to implement a mobile site, failing to optimize the current site for mobile, failing to optimize the sites' speed, failing to make improvements to the user interface, failing to make improvements to the user experience, and failing to engage in A/B Testing. This failure has led to lost profits in the amount of $8,600,131.51

i. Disclosing confidential financial information (internal profit) of GTG to a business collaborator who was not entitled to receipt of such proprietary and confidential information.

14. Defendants/Counterclaimants are entitled to the recovery of damages resulting from Plaintiff and Third-Party Defendants' breach of the Agreement in the amount of $20,068,560.

15. Defendants/Counterclaimants are entitled to the recovery of attorney fees and costs relating to the prosecution of the breach of contract claim.

## IV.

## COUNT 2

## MISREPRESENTATION

16. Defendant/Counterclaimant incorporates by reference each and every allegation contained in the paragraphs above.

17. On or about September of 2013, Defendant/Counterclaimant commenced discussion with Third-Party Defendants with regard to the provision of services relating to the construction of the GTG Website, GTG Source Code, and the Contractor Development to Launch Services.

18. Defendant and Third-Party Defendants engaged in a series of ongoing communications. These communications included the following:

    1) E-mails dated September 24, 2013, and September 27, 2013 from Robert Hash, Jr. (using the e-mail address roberthashjr@gmail.com) to GTG President, Joshua Hohweiler (via the e-mail address info@greaterthangatsby.com) on behalf of himself and Andrew Egenes. Mr. Egenes was CC'd on the September 27, 2013 e-mail via his aegenes@gmail.com address.

    2) Telephone calls between Robert Hash, Jr. (on behalf of himself and Andrew Egenes) and Greater Than Gatsby President, Joshua Hohweiler at the GTG office in Richardson, TX. These calls include a call on September 23, 2013 from Mr. Hash to GTG President Joshua Hohweiler, and a call on September 26, 2015 from GTG President Joshua Hohweiler to Robert Hash, Jr. at 404-987-0958 x200.

3) In-person meeting between Robert Hash Jr. and GTG President Joshua Hohweiler at the Buffalo Wild Wings in Garland, TX on September 19, 2013.

19. Within the above-referenced communications, Third-Party Defendants made the following representations to Defendant/Counterclaimant:

a. The website development would be divided into three phases. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

b. Each phase of development would to be completed by a certain date, with the third and final stage of development to be completed by December 31, 2013. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

c. That Plaintiff and Third-Party Defendants could and would complete the Contractor Development To Launch Services in a timely manner. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

d. That upon the completion of the Contractor Development to Launch Services, Defendant could retain Plaintiff and Third-Party Defendants,

to provide management services. If Defendant chose to retain Plaintiff and Third-Party Defendants, services would be provided on a month-to-month basis, and work on the website would transition to a management phase with a flat-monthly rate. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes on the September 26, 2013 phone call referenced above.

e.  That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Search Engine Optimization in order to maximize the site's search engine ranking. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

f.  That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Website Conversion Optimization in order to maximize sales. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

g. That Plaintiff and Third-Party Defendant had the requisite skill and expertise to competently perform the services required under the Agreement. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

h. With regard to services under the Agreement, Third Party Defendants and Plaintiff represented that they provided services of the same type and nature to multiple clients and that they had an active commercial business relating to same. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mails dated September 24, 2013 and September 27, 2013, and at the in-person meeting referenced above.

i. That Third-Party Defendants and Plaintiff would transfer possession and ownership of the GTG Website Source Code to Defendants upon completion. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, and at the in-person meeting referenced above.

20. Due to the overwhelming success of Greater Than Gatsby, Plaintiff and Third-Party Defendants' compensation during the management phase would be significantly smaller than the revenue sharing model used during the website development period.

21. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally acted to delay development in order to continue its compensation under the revenue sharing model.

22. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current site for mobile use, and failed to implement a cognizable content strategy resulting in a failure to perform the Search Engine Optimization duties as represented to Defendants/Counterclaimants.

23. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current site for mobile use, failed to optimize the user interface, failed to optimize the user experience and failed to engage in A/B Testing resulting in a failure

to perform the Website Conversion Optimization duties as represented to Defendants/Counterclaimants.

24. Subsequent to the entry into the Agreement, GTG discovered that Third-Party Defendants and Plaintiff did not possess the requisite skill and expertise to competently perform the services required under the Agreement.

25. Subsequent to the entry into the Agreement, GTG discovered that the Third Party Defendants and Plaintiff did not provide services of the same type and nature as those within the Agreement to multiple clients and that they did not have commercial business relating to same. Instead, GTG was the only client of Third Party Defendants and Plaintiff.

26. Subsequent to the generation of the Source Code, Defendant made demand upon Plaintiff and Third-Party Defendants to tender ownership and possession of the same. Said demand was refused. As of this date, Defendant has not been provided a copy of the GTG Website Source Code, nor has ownership of the code and its copyright been transferred to Defendant.

27. Representations by Plaintiff and Third-Party Defendants were made in the course of their business operations.

28. In the course of said representations, Plaintiff and Third-Party Defendants supplied false information for use by Defendants/Counterclaimants with

respect to the development timetable of the website, their intent and ability to perform Search Engine Optimization, their intent and ability to engage in Website Conversion Optimization, and their intentions to transition to the management phase following the close of development.

29. When the representations were made, Plaintiff and Third-Party Defendants knew they were false, or made them recklessly without knowledge of the truth and as a positive assertion.

30. Plaintiff and Third-Party Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

31. Defendant/Counterclaimant suffered pecuniary loss by justifiably relying on said information.

32. Defendant/Counterclaimant is entitled to the recovery of damages in the amount of $629,359.98.

33. Defendant/Counterclaimant is entitled to consequential damages in an amount which will be established in court.

34. Defendant/Counterclaimant is entitled to punitive damages in an amount to be determined by the trier of fact as the harm resulted from Plaintiff and Third-Party Defendants' fraud, malice, or gross negligence.

**<u>V.</u>**

## COUNT 3

## FRAUD

35. Defendant/Counterclaimant incorporates by reference each and every allegation contained in the paragraphs above.

36. On or about September of 2013, Defendant/Counterclaimant commenced discussion with Third-Party Defendants with regard to the provision of services relating to the construction of the GTG Website, GTG Source Code, and the Contractor Development to Launch Services.

37. Defendant and Third-Party Defendants engaged in a series of ongoing communications. These communications included the following:

   1) E-mails dated September 24, 2013, and September 27, 2013 from Robert Hash, Jr. (using the e-mail address roberthashjr@gmail.com) to GTG President, Joshua Hohweiler (via the e-mail address info@greaterthangatsby.com) on behalf of himself and Andrew Egenes. Mr. Egenes was CC'd on the September 27, 2013 e-mail via his aegenes@gmail.com address.

   2) Telephone calls between Robert Hash, Jr. (on behalf of himself and Andrew Egenes) and Greater Than Gatsby President,

Joshua Hohweiler at the GTG office in Richardson, TX. These calls include a call on September 23, 2013 from Mr. Hash to GTG President Joshua Hohweiler, and a call on September 26, 2015 from GTG President Joshua Hohweiler to Robert Hash, Jr. at 404-987-0958 x200.

3) In-person meeting between Robert Hash Jr. and GTG President Joshua Hohweiler at the Buffalo Wild Wings in Garland, TX on September 19, 2013.

38. Within the above-referenced communications, Third-Party Defendants made the following representations to Defendant/Counterclaimant:

a. The website development would be divided into three phases. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

b. Each phase of development would to be completed by a certain date, with the third and final stage of development to be completed by December 31, 2013. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

c. That Plaintiff and Third-Party Defendants could and would complete the Contractor Development To Launch Services in a timely manner. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

d. That upon the completion of the Contractor Development to Launch Services, Defendant could retain Plaintiff and Third-Party Defendants, to provide management services. If Defendant chose to retain Plaintiff and Third-Party Defendants, services would be provided on a month-to-month basis, and work on the website would transition to a management phase with a flat-monthly rate. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes on the September 26, 2013 phone call referenced above.

e. That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Search Engine Optimization in order to maximize the site's search engine ranking. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

f.  That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Website Conversion Optimization in order to maximize sales. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

g.  That Plaintiff and Third-Party Defendant had the requisite skill and expertise to competently perform the services required under the Agreement. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

h.  With regard to services under the Agreement, Third Party Defendants and Plaintiff represented that they provided services of the same type and nature to multiple clients and that they had an active commercial business relating to same. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mails dated September 24, 2013 and September 27, 2013, and at the in-person meeting referenced above.

i. That Third-Party Defendants and Plaintiff would transfer possession and ownership of the GTG Website Source Code to Defendants upon completion. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, and at the in-person meeting referenced above.

39. Due to the overwhelming success of Greater Than Gatsby, Plaintiff and Third-Party Defendants' compensation during the management phase would be significantly smaller than the revenue sharing model used during the website development period.

40. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally acted to delay development in order to continue its compensation under the revenue sharing model.

41. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current site for mobile use, and failed to implement a cognizable content strategy resulting in a failure to perform the Search Engine Optimization duties as represented to Defendants/Counterclaimants.

42. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current site for mobile use, failed to optimize the user interface, failed to optimize the user experience and failed to engage in A/B Testing resulting in a failure to perform the Website Conversion Optimization duties as represented to Defendants/Counterclaimants.

43. Subsequent to the entry into the Agreement, GTG discovered that Third-Party Defendants and Plaintiff did not possess the requisite skill and expertise to competently perform the services required under the Agreement.

44. Subsequent to the entry into the Agreement, GTG discovered that the Third Party Defendants and Plaintiff did not provide services of the same type and nature as those within the Agreement to multiple clients and that they did not have commercial business relating to same. Instead, GTG was the only client of Third Party Defendants and Plaintiff.

45. Subsequent to the generation of the Source Code, Defendant made demand upon Plaintiff and Third-Party Defendants to tender ownership and possession of the same. Said demand was refused. As of this date, Defendant

has not been provided a copy of the GTG Website Source Code, nor has ownership of the code and its copyright been transferred to Defendant.

46. Said representations were material.

47. Said representations were false.

48. When the representations were made, Plaintiff and Third-Party Defendants knew they were false, or made them recklessly without knowledge of the truth and as a positive assertion.

49. Plaintiff and Third-Party Defendants made the representations with the intent that Defendants/Counterclaimants rely on them.

50. Defendant/Counterclaimant relied on said representations.

51. Defendant/Counterclaimant suffered injury thereby.

52. Defendant/Counterclaimant is entitled to the recovery of damages in the amount of $629,359.98.

53. Defendant/Counterclaimant is entitled to punitive damages in an amount to be determined by the trier of fact as the harm resulted from Plaintiff and Third-Party Defendants' fraud, malice, or gross negligence.

## VI.

## COUNT 4

## FRAUD IN THE INDUCEMENT

54. Defendant/Counterclaimant incorporates by reference each and every allegation contained in the paragraphs above.

55. On or about September of 2013, Defendant/Counterclaimant commenced discussion with Third-Party Defendants with regard to the provision of services relating to the construction of the GTG Website, GTG Source Code, and the Contractor Development to Launch Services.

56. Defendant and Third-Party Defendants engaged in a series of ongoing communications. These communications included the following:

1) E-mails dated September 24, 2013, and September 27, 2013 from Robert Hash, Jr. (using the e-mail address roberthashjr@gmail.com) to GTG President, Joshua Hohweiler (via the e-mail address info@greaterthangatsby.com) on behalf of himself and Andrew Egenes. Mr. Egenes was CC'd on the September 27, 2013 e-mail via his aegenes@gmail.com address.

2) Telephone calls between Robert Hash, Jr. (on behalf of himself and Andrew Egenes) and Greater Than Gatsby President, Joshua Hohweiler at the GTG office in Richardson, TX. These calls include a call on September 23, 2013 from Mr. Hash to

GTG President Joshua Hohweiler, and a call on September 26, 2015 from GTG President Joshua Hohweiler to Robert Hash, Jr. at 404-987-0958 x200.

3) In-person meeting between Robert Hash Jr. and GTG President Joshua Hohweiler at the Buffalo Wild Wings in Garland, TX on September 19, 2013.

57. Within the above-referenced communications, Third-Party Defendants made the following representations to Defendant/Counterclaimant:

a. The website development would be divided into three phases. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

b. Each phase of development would to be completed by a certain date, with the third and final stage of development to be completed by December 31, 2013. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

c. That Plaintiff and Third-Party Defendants could and would complete the Contractor Development To Launch Services in a timely manner.

This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls referenced above.

d.  That upon the completion of the Contractor Development to Launch Services, Defendant could retain Plaintiff and Third-Party Defendants, to provide management services. If Defendant chose to retain Plaintiff and Third-Party Defendants, services would be provided on a month-to-month basis, and work on the website would transition to a management phase with a flat-monthly rate. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes on the September 26, 2013 phone call referenced above.

e.  That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Search Engine Optimization in order to maximize the site's search engine ranking. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

f.  That Plaintiff and Third-Party Defendants would perform and were qualified to perform expert-level Website Conversion Optimization in order to maximize sales. This representation was made by Robert

Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

g.  That Plaintiff and Third-Party Defendant had the requisite skill and expertise to competently perform the services required under the Agreement. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mail dated September 24, 2013, and at the in-person meeting referenced above.

h.  With regard to services under the Agreement, Third Party Defendants and Plaintiff represented that they provided services of the same type and nature to multiple clients and that they had an active commercial business relating to same. This representation was made by Robert Hash, Jr. on behalf of himself and Andrew Egenes in the two phone calls, the e-mails dated September 24, 2013 and September 27, 2013, and at the in-person meeting referenced above.

i.  That Third-Party Defendants and Plaintiff would transfer possession and ownership of the GTG Website Source Code to Defendants upon completion. This representation was made by Robert Hash, Jr. on

behalf of himself and Andrew Egenes in the two phone calls, and at the in-person meeting referenced above.

58. Due to the overwhelming success of Greater Than Gatsby, Plaintiff and Third-Party Defendants' compensation during the management phase would be significantly smaller than the revenue sharing model used during the website development period.

59. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally acted to delay development in order to continue its compensation under the revenue sharing model.

60. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current site for mobile use, and failed to implement a cognizable content strategy resulting in a failure to perform the Search Engine Optimization duties as represented to Defendants/Counterclaimants.

61. Contrary to the representations made to Defendant/Counterclaimant, Plaintiff and Third-Party Defendants intentionally failed to perform speed optimization, failed to implement a mobile site, failed to optimize the current

site for mobile use, failed to optimize the user interface, failed to optimize the user experience and failed to engage in A/B Testing resulting in a failure to perform the Website Conversion Optimization duties as represented to Defendants/Counterclaimants.

62. Subsequent to the entry into the Agreement, GTG discovered that Third-Party Defendants and Plaintiff did not possess the requisite skill and expertise to competently perform the services required under the Agreement.

63. Subsequent to the entry into the Agreement, GTG discovered that the Third Party Defendants and Plaintiff did not provide services of the same type and nature as those within the Agreement to multiple clients and that they did not have commercial business relating to same. Instead, GTG was the only client of Third Party Defendants and Plaintiff.

64. Subsequent to the generation of the Source Code, Defendant made demand upon Plaintiff and Third-Party Defendants to tender ownership and possession of the same. Said demand was refused. As of this date, Defendant has not been provided a copy of the GTG Website Source Code, nor has ownership of the code and its copyright been transferred to Defendant.

65. Said representations were material.

66. Said representations were false.

67. When the representations were made, Plaintiff and Third-Party Defendants knew they were false, or made them recklessly without knowledge of the truth and as a positive assertion.

68. Plaintiff and Third-Party Defendants made the representations with the intent that Defendants/Counterclaimants rely on them.

69. Defendant/Counterclaimant relied on said representations.

70. Defendant/Counterclaimant suffered injury thereby.

71. Defendant/Counterclaimant is entitled to the recovery of damages in the amount of $629,359.98.

72. Defendant/Counterclaimant is entitled to Punitive damages in an amount to be determined by the trier of fact as the harm resulted from Plaintiff and Third-Party Defendants' fraud, malice, or gross negligence.

## VII.

## COUNT 5

## UNJUST ENRICHMENT

73. Defendant/Counterclaimant incorporates by reference each and every allegation contained in the paragraphs above.

74. During the course of construction, development, and implementation of the GTG Website, GTG has tendered payments to Plaintiff and Third-Party

Defendants in the amount of $629,359.98 in performance with the Agreement.

75. Plaintiff and Third-Party Defendants wrongfully secured a benefit from Defendant.

76. The benefit obtained was the result of Plaintiff and Third-Party Defendants taking unfair advantage of Defendant in that the compensation demanded for the services rendered.

77. The compensation paid to Plaintiff and Third-Party Defendants constitutes a ten-fold increase of the reasonable market value for the identical product/services provided to GTG.

78. The ongoing and reasonable rate in the trade and industry to construct a website with the identical features of the GTG Website (and attendant GTG Source Code) is in the range of between $21,000.00 to $35,000.00.

79. Further, as discussed above, the services rendered by Plaintiff and Third-Party were not performed with the requisite level of care and competency required.

80. Despite receipt of $629,359.98, Plaintiff and Third-Party refused to tender a copy of the website source code to Defendant.

81. Defendant has been injured as a result of Plaintiff and Third-Party Defendants' conduct aforesaid.

82. Plaintiff and Third-Party Defendants should make restitution by disgorging to Defendant the benefits wrongfully obtained, to wit – the sum of $629,359.98.

## VIII.

## COUNT SIX

## <u>DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP</u>

83. Defendant/Counterclaimant incorporates by reference each and every allegation contained in the paragraphs above.

84. Plaintiff alleges that it is the sole owner of U.S. Copyright Registration Number TX 7-940-849, which they allege embodies substantially all of the Platform and New Website (the "Copyright") created for the use of Greater Than Gatsby, LLC.

85. An actual and present justiciable controversy requiring declaratory relief exists as to whether Plaintiff or Defendant are the owner of the Copyright.

86. Plaintiff is not the sole author and owner of all 17 U.S.C. § 106 rights in the Copyright.

87. Much of the Platform, New Website, and other works authored by Plaintiff consists of Plug-Ins that were authored by others.

88. All of the content and/or the rights to the content (consisting of photographs, writings, products, actions, presets, etc.) displayed on the New Website was owned by Defendant GTG.

89. Plaintiff has violated Defendant's rights by retaining sole ownership over the Copyright insofar as Plaintiff asserts a right to any of the content displayed on the New Website.

90. Defendant is entitled to a declaratory judgment against Plaintiff as set forth above pursuant to the Copyright Act, 17 U.S.C. § 101 and the Constitution of the United States.

## IX.

## PRAYER

91. Defendants/Counterclaimants respectfully request that judgment be entered with respect to all claims asserted herein.

**WHEREFORE, PREMISES CONSIDERED**,

Defendants/Counterclaimants request that Plaintiff and Third Party Defendants be cited to appear and answer, and that on trial, Defendants/Counterclaimants have:

A. Judgment against Plaintiff and Third-Party Defendants in the amount of $20,068,560 with prejudgment interest thereon and post-judgment interest thereon at the highest legal rate from the date of judgment until paid;

B. Attorney Fees and Costs as authorized under Georgia Law;

C. Consequential damages in an amount which will be established in court;

D. Punitive damages in an amount to be determined by the trier of fact;

E. Declaratory Judgment as outlined above; and

F. Such other and further relief that may be just and proper.

Respectfully Submitted,

s/ Jennifer A. Kurle
Jennifer Kurle
KurleLaw, LLC
Ga. Bar No. 140812
309 Sycamore St.
Decatur, GA 30030
404-458-4080
E-mail: jen@kurlelaw.com

**-and-**

s/ Charles A. Moster
Charles A. Moster
Moster Law Firm
Texas Bar No. 00797782
4920 S. Loop 289

Lubbock, TX 79414
806-778-6486
E-mail: charlesalbertmoster@gmail.com
*Attorneys for Defendants/Counterclaimants*

## CERTIFICATION OF COMPLIANCE WITH TYPE LIMITATIONS

I do hereby certify that the above document has been prepared with one of the font and point selections approved by the court in LR5.1C.

/s/ Charles A. Moster
Charles A. Moster
Attorney For Defendants

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of this document was served on the below listed party on  December 21, 2015, via the ECF/Pacer electronic system:

Andrew Egenes and Lift Media, LLC
Via Counsel Of Record, Odis William Williams II
The Law Office of Odis Williams, P.C.

Counterdefendant(s)/Third-Party Defendant(s) who have not yet answered or appeared shall be served with the Amended Complaint as provided by law.

s/ Jennifer A. Kurle
Jennifer Kurle
Attorney For Defendants